AO 91 (Rev. 02/09)  Criminal Complaint

United States Courts
Southern District of Texas
FILED

FEB 1 3 2010

Clerk of Court

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| United States of America | ) |
| v. | ) |
| Victor R. PEREZ | ) Case No.  C-10-162M |
| | ) |
| Defendant | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __02/12/2010__ in the county of __Kenedy__ in the __Southern__ District of __Texas__, the defendant violated __21__ U. S. C. § __841(a)(1)__, an offense described as follows:

Knowingly, intentionally, and unlawfully Possess with the Intent to Distribute a Controlled Substance in Schedule II of the Controlled Substance Act of 1970, to wit: 92.8 kilograms (approximate gross weight) of Cocaine

This criminal complaint is based on these facts:
ATTACHMENT "A"

☑ Continued on the attached sheet.

_____
Complainant's signature

Michael J. Tinkler, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: __02/13/2010__

_____
Judge's signature

City and state:  __Corpus Christi, Texas__

B. Janice Ellington, United States Magistrate Judge
Printed name and title

"ATTACHMENT A"

On February 12, 2010 at approximately 1:25 a.m. at the Sarita, Texas CBP checkpoint a 2003 gold-colored Kenworth Tractor bearing Texas license plates RF7-B84, pulling a white-colored utility trailer, entered the primary lane for inspection. U.S. Border Patrol Agent (BPA) Jose Castro, who was working the primary inspection lane, identified himself as a Border Patrol Agent and proceeded to conduct an immigration inspection of the driver, Daniel GARCIA-Avalos, and the passenger, Victor Rafael PEREZ.

BPA Castro asked GARCIA-Avalos if he could open the door of the tractor so BPA Castro could make contact with the passenger (PEREZ) who was in the sleeper portion of the tractor trailer. As GARCIA-Avalos opened the door he presented his Permanent Resident Card and PEREZ' United States Passport Card.

As BPA Castro was conducting an immigration inspection of GARCIA-Avalos and PEREZ, BPA Carlos Nunez and his canine partner "Max" conducted a non-intrusive free air sniff of the vehicle's exterior. As BPA Nunez and "Max" conducted the non-intrusive free air sniff of the vehicle's exterior, BPA Castro asked GARCIA-Avalos where he was going. GARCIA-Avalos stated they were going to New Jersey to drop off a load of watermelons. BPA Castro then asked GARCIA-Avalos where he was coming from and he (GARCIA-Avalos) stated he was coming from Pharr, Texas. At that time, BPA Nunez advised BPA Castro that his service canine "Max" alerted to the sleeper area of the tractor.

Due to the service canine alert on the vehicle, BPA Castro asked for and received consent from GARCIA-Avalos to further inspect the vehicle and subsequently referred GARCIA-Avalos to the secondary inspection area. Once in the secondary inspection area, GARCIA-Avalos and PEREZ were asked to exit the vehicle. At that time BPA Nunez and his service canine performed a systematic search of the tractor and trailer.

Following this search, BPA Nunez informed BPA Castro that the service canine had alerted to the sleeper area of the tractor. BPA Nunez informed BPA Castro that the service canine entered the cab of the tractor and alerted and indicated to the floor of the cab. BPA Nunez subsequently discovered a false compartment located in the floor of the sleeper with an access panel that was secured with three flathead screws. BPA Nunez also located a flat head screwdriver within the sleeper compartment that matched the screw heads securing the access panel.

The false compartment was subsequently opened and Border Patrol Agents discovered 83 plastic wrapped bundles with an approximate gross weight of 92.8 kilograms located within the false compartment. BPA Nunez performed a field test on the contents of the bundles utilizing a Narco-Pouch test kit which revealed a positive result for the presence of cocaine. GARCIA-Avalos and PEREZ were subsequently placed under arrest and escorted inside the checkpoint for further processing.

GARCIA-Avalos and PEREZ were advised of their Miranda Warnings by BPA Gaspar Gracia, as witnessed by BPA Joseph M. Corona. GARCIA-Avalos stated that he understood his rights and that he was willing to answer questions and make a statement regarding his arrest. PEREZ stated that he understood his rights and that he was not willing to make a statement without a lawyer present.

During a subsequent interview of GARCIA-Avalos by Border Patrol Agents, GARCIA-Avalos stated that he had no knowledge of the narcotics hidden inside the tractor. GARCIA-Avalos stated that he had been working for PEREZ, who he identified as his boss, for about four months. GARCIA-Avalos stated that he was paid $700 a trip by PEREZ for driving.

GARCIA-Avalos further stated that he was picked up at his house in Harlingen, Texas on February 11, 2010 at approximately 11:00 p.m. by PEREZ. GARCIA-Avalos stated that PEREZ instructed him to drive first because PEREZ had not had any rest today. GARCIA-Avalos stated that he picked up the load earlier that day and was instructed by PEREZ to leave the trailer at a truck stop and to return to PEREZ's house with the tractor. GARCIA-Avalos stated that PEREZ told him return home and he (PEREZ) would pick him (GARCIA-Avalos) up later that day.

On February 12, 2010, DEA SA Jay Tinkler and TFO Rusty Vickers arrived at the Sarita, Texas CBP checkpoint and assumed the investigation. Upon arrival, SA Tinkler spoke with representatives of Sandia Depot in Edinburgh, Texas and confirmed that GARCIA-Avalos had indeed picked up a load of watermelons on February 11, 2010. The dispatcher for Sandia Depot stated that PEREZ presented documentation to the company earlier that week that indicated PEREZ was the owner of Genesis Transport and was interested only in loads destined for New Jersey.

The dispatcher stated that Sandia Depot had never conducted business with PEREZ or Genesis Transport before this date. In addition, the dispatcher confirmed that the load of watermelons in question was legitimate and was destined for a company in Howell, New Jersey. SA Tinkler also spoke with the company president of Sandia Depot who confirmed the afore-mentioned information.

SA Tinkler, as witnessed by TFO Vickers, advised GARCIA-Avalos, both verbally and in writing, of his Miranda Rights prior to speaking to GARCIA-Avalos. GARCIA-Avalos subsequently indicated verbally and in writing that he understood his Miranda Rights and wanted to speak with SA Tinkler concerning the cocaine seizure.

GARCIA-Avalos stated that he had worked for PEREZ for approximately four months as a truck driver and was paid $700 per trip. GARIA-Avalos also stated that PEREZ instructed him to pick up a load of produce on February 11, 2010 at Sandia Depot and leave the trailer at a Valero Truck Stop and leave the tractor at PEREZ' residence. GARCIA-Avalos stated that PEREZ always required that the tractor be parked at PEREZ residence. GARCIA-Avalos stated that PEREZ informed him that he (PEREZ) would pick him up later that evening prior to departing for New Jersey.

GARCIA-Avalos stated that when PEREZ picked him up at approximately 11:00 p.m. on February 11, 2010, PEREZ would not let GARCIA-Avalos put his clothes in the sleeper area of the tractor and instructed GARCIA-Avalos to place his luggage in a separate storage area. GARCIA-Avalos stated that he thought this was strange and that this had never happened before. GARCIA-Avalos also stated that he noticed that the floorboard area of the tractor was freshly cleaned which he stated was also strange. GARCIA-Avalos stated that PEREZ never cleaned the interior of the truck but required GARCIA-Avalos to perform that duty. GARCIA-Avalos also stated that PEREZ instructed him to drive first because PEREZ told him that PEREZ had not had any rest that day.

SA Tinkler, as witnessed by TFO Vickers, advised PEREZ, both verbally and in writing of his Miranda Rights, utilizing BPA Javier Vega as an interpreter due to the fact that PEREZ stated that he understood English, but felt more comfortable speaking Spanish. SA Tinkler informed PEREZ that since he had previously invoked his right to an attorney, SA Tinkler was unable to discuss any matters concerning his arrest unless PEREZ wrote a statement indicating that he would be willing to speak with SA Tinkler without an attorney present.

PEREZ subsequently indicated verbally that he would be willing to answer some questions and initialed in the appropriate areas on a DEA-13 that he understood his rights and would be willing to speak without an attorney present, but would not provide a written statement indicating that even though he had previously invoked his Miranda Rights he was now willing to speak without an attorney present.

At that time, SA Tinkler informed PEREZ that SA Tinkler could not discuss any matters relating to his arrest until PEREZ received legal counsel. PEREZ then began to make several unsolicited comments to SA Tinkler. SA Tinkler repeatedly informed PEREZ that SA Tinkler could not speak with PEREZ concerning his arrest but PEREZ continued to make the following unsolicited comments.

PEREZ stated that GARCIA-Avalos was innocent and knew nothing about the cocaine that was discovered in the tractor. PEREZ also stated that he was sorry that he had the drugs in his truck and that this was the first time that he (PEREZ) had done this (transport drugs). PEREZ stated that the cocaine was destined for Atlanta, Georgia and that he (PEREZ) was supposed to meet two or three guys there and give the cocaine to them. PEREZ also stated that there was an operation going on in Atlanta that he was delivering the cocaine to.

SA Tinkler informed PEREZ that SA Tinkler could not discuss this matter until PEREZ spoke with an attorney. PEREZ then asked SA Tinkler about the possibility of letting him (PEREZ) deliver the drugs so he (PEREZ) would receive credit for assisting law enforcement officials. SA Tinkler again stated that due to the fact that PEREZ was not willing to write a statement waving his Miranda Rights, SA Tinkler was unable to discuss anything concerning PEREZ' arrest. PEREZ continued to make additional unsolicited

comments to SA Tinkler concerning the possibility of receiving some type of protection for him and his family if he (PEREZ) were able to deliver the cocaine.

A subsequent records check indicated that PEREZ is the registered owner of both the tractor and trailer that was involved in this seizure and the owner of Genesis Transport.

AUSA Elsa Salinas authorized federal prosecution of Victor PEREZ on February 12, 2010. The amount of cocaine seized infers intent to distribute.